# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| MARITZA TERUEL, and<br>KIMBERLY SPEAR,<br><br>      Plaintiffs,<br><br>v.<br><br>SCHIAVI HOMES, LLC,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# COMPLAINT
### (Jury Trial Demanded)

Plaintiffs Maritza Teruel and Kimberly Spear complain against Defendant Schiavi Homes, LLC, and demand a trial by jury as follows:

## PARTIES, JURISDICTION, and VENUE

1. Plaintiff Maritza Teruel resides in Oxford (Oxford County) Maine.

2. Plaintiff Kimberly Spear resides in Turner (Androscoggin) Maine.

3. Defendant Schiavi Homes, LLC is a Maine limited liability company with a principal place of business in Oxford, Maine. Upon information and belief, Schiavi Homes, LLC is part of an integrated group of businesses in Oxford County with common ownership and management, interrelated operations, and centralized control of labor relations.

4. Jurisdiction is proper under 28 U.S.C. § 1331 because one or more claims asserted herein arise under federal law.

5. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim

occurred in Maine. Under Rule 3(h) of the Rules of this Court, this action should be tried in Portland because, when the events at issue occurred, Plaintiffs resided in Oxford and Androscoggin Counties and were employed in Oxford County, and because Defendant's principal place of business was in Oxford County.

6. Plaintiffs have exhausted all administrative requirements and/or have met all relevant conditions precedent before commencing suit, including obtaining so-called "Notices of Right to Sue" from the Maine Human Rights Commission (MHRC) and Equal Employment Opportunity Commission (EEOC) and have commenced suit no later than two years from the last act of discrimination.

## Facts Specific to Maritza Teruel

7. Ms. Teruel started working for Schiavi Homes, LLC in December 2018. She provided project management, sales, and administrative support services for Schiavi. Her direct supervisor was Jeff Little.

8. In July 2023, Ms. Teruel first noticed Mr. Little directing offensive sexually charged comments toward several of Ms. Teruel's female co-workers. One of those co-workers was co-Plaintiff Kimberly Spear.

9. This pattern of harassment and workplace hostility continued on a daily basis. For example, Mr. Little frequently stated that he wanted a "threesome" with women in their office. He would talk about his sex life or pornography he had seen online. Mr. Little regularly humiliated Ms. Teruel and some of her female co-workers with dirty jokes or offensive comments about their bodies. He referred to the female administrative staff as his "bitches."

10. In August 2023, Mr. Little began directing sexually charged comments toward Ms. Teruel. For example, he made unwelcome and offensive comments about her breasts. He told her to take a picture of herself wearing sexy outfits. Mr. Little told Ms. Teruel that she "wanted it" while licking his lips. In September 2023, he tried to touch Ms. Teruel's breasts and said "you wore that shirt for me." He frequently made reference to his penis.

11. Because Mr. Little was Ms. Teruel's boss, she was very nervous about what to do or say about his behavior. At times Mr. Little would laugh and say he was "joking," but Ms. Teruel was extremely uncomfortable around him at all times. Ms. Teruel knew her female colleagues felt the same way.

12. Mr. Little's offensive sexually-charged conduct continued through the end of September of 2023, when Ms. Teruel took a short leave of absence.

13. Ms. Teruel took medical leave at the end of September 2023 for surgery on her bicep. She expected to be out for a week, but due to the invasive nature of the surgery, she needed to remain out until October 12, 2023. Ms. Teruel used all of her paid time off (PTO).

14. Ms. Teruel returned to work on October 12, 2023. She did not need or request restrictions and did not request additional time off. She told her employer that she was cleared to work and had plenty of projects to keep her busy.

15. Ms. Teruel was ready, willing, and able to return to her job duties and full workload. However, another Schiavi supervisor, Anna Cyr, told Ms. Teruel that she needed "extra time to recuperate." Ms. Cyr then told Ms. Teruel she would be

laid off in a few weeks because work was slowing down and that Ms. Teruel should apply for unemployment. Ms. Cyr told Ms. Teruel not to mention her surgery when she applied for unemployment and to say she was laid off due to a lack of work. Ms. Cyr told Ms. Teruel she would bring her back on after the holidays.

16. Most or all of what Ms. Cyr told Ms. Teruel was false. Ms. Teruel had plenty of work. Ms. Teruel told Ms. Cyr that her comments sounded illegal and asked if she would get in trouble with the State. Ms. Cyr assured Ms. Teruel that she would not be in trouble, as long as she said she was laid off due to a lack of business. Ms. Teruel felt she had no choice and did what Ms. Cyr told her to do.

17. Ms. Teruel contacted Ms. Cyr on November 8, 2023 and again on November 21, 2023 to check in about returning to work. Ms. Cyr responded on November 8, but all she said was that she would "try to brainstorm" ideas about projects for Ms. Teruel to do. Neither Ms. Cyr nor anyone else at Schiavi returned Ms. Teruel's calls or texts.

18. Because Ms. Teruel had not heard from anyone, in late November she went to Schiavi to collect her personal belongings. She learned that Schiavi hired two people to do the work Ms. Teruel was doing very soon after her "layoff."

19. Ms. Teruel did not quit her job.

### Facts Specific to Kimberly Spear

20. Ms. Spear began working for Schiavi Homes, LLC on July 31, 2022. She provided administrative support services. After a few months, Ms. Spear transferred to a different department, where Jeff Little became her supervisor.

21. Beginning in October 2022, and continuing throughout her employment with Schiavi Homes, Mr. Little made frequent inappropriate and highly offensive sexually charged comments to Ms. Spear and also to several female co-workers in her presence. One of those co-workers was co-Plaintiff Maritza Teruel.

22. This pattern of harassment and workplace hostility continued on a daily basis for the next year. For example, Mr. Little frequently stated that he wanted a "threesome" with Ms. Spear and other women in their office. He would tell offensive stories about his sex life or talk about pornography he had seen online. Mr. Little regularly humiliated Ms. Spear and some of her female co-workers with dirty jokes or made offensive comments about their bodies. He referred to the female administrative staff as his "bitches."

23. Because Mr. Little was Ms. Spear's boss, she was very nervous about what to do or say. At times Mr. Little would laugh and say he was "joking," but Ms. Spear was extremely uncomfortable around him at all times.

24. Mr. Little constantly talked about one of Ms. Spear's female colleague's breasts. He made frequent rude gestures and mimicked sexual acts, such as telling them he wanted to stick his head between her colleague's breasts, making offensive licking gestures to mimic fellatio, and thrusted his hips in her direction.

25. Mr. Little touched Ms. Spear's backside three times without her consent.

26. By the end of the summer of 2023, Ms. Spear was no longer willing to tolerate the hostile work environment. She was going through a very scary health

crisis (cancer) and decided she could not take the way Mr. Little treated her female colleagues and Ms. Spear or his dishonest and fraudulent business practices.

27. Ms. Spear felt compelled to resign on October 2, 2023.

## COUNT I
### 5 M.R.S. § 4572; 42 U.S.C. § 2000e-2
### Sex Discrimination - Hostile Work Environment and Disparate Treatment
### Teruel v. Schiavi

28. Plaintiffs repeat and incorporate Paragraphs 1-27 above.

29. Ms. Teruel is female and is, thus, a member of a protected class under Title VII and the MHRA.

30. Ms. Teruel was qualified to perform the essential functions of her job.

31. As set forth above, Ms. Teruel was subjected to unwelcome sexual harassment by her supervisor on numerous occasions while working for Defendant.

32. Ms. Teruel objected to and opposed sexually offensive behavior and comments, and refused Mr. Little's numerous advances

33. The harassment to which Plaintiff was subjected was objectively and subjectively offensive, such that a reasonable person would find it hostile and abusive, and Ms. Teruel in fact perceived it as hostile and abusive. The harassment was sufficiently severe and pervasive to alter the terms and conditions of Ms. Teruel's employment and created an abusive working environment.

34. Defendant knew or should have known of the sexual harassment and failed to take prompt remedial action, thereby permitting and/or ignoring a sexually hostile work environment.

35. Ms. Teruel was subjected to adverse employment action, namely, Defendant terminated her employment on or about November 21, 2023.

36. As a result of Defendant's conduct, Ms. Teruel sustained pecuniary and non-pecuniary damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under Title VII and MHRA:

A. Reinstatement, or front pay in lieu of reinstatement;
B. Back pay from November 21, 2023 and prejudgment interest;
C. Compensatory damages;
D. Punitive damages;
E. An award of reasonable attorney's fees and all costs; and
F. All other damages to which plaintiff may be entitled.

## COUNT II
### 26 M.R.S. § 833
### Whistleblower Retaliation
### Teruel v Schiavi

37. Plaintiff repeats the allegations contained in Paragraphs 1 through 36.

38. Plaintiff engaged in activity protected under the Maine Whistleblower's Protection Act, 26 M.R.S. §§ 831-840 ("MWPA"); to wit, acting in good faith, she reported to her employer what she had reasonable cause to believe were violations of laws, rules, or regulations governing unemployment compensation, and refused to engage in activity that would be a violation of laws, rules, or regulations relative to unemployment compensation.

39. Defendant subjected Plaintiff to adverse employment action, to wit: Defendant terminated Plaintiff's employment because she engaged in the protected activity described in the preceding paragraph.

40. As a direct and proximate result of Defendant's actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MWPA and MHRA:

A. Reinstatement, or front pay in lieu of reinstatement;
B. Back pay from November 21 2023, with prejudgment interest;
C. Compensatory damages;
D. Punitive damages;
E. An award of reasonable attorney's fees and all costs; and
F. All other damages to which Plaintiff may be entitled.

## COUNT III
### 5 M.R.S. §§ 4682, 4684, 4684-A
### Interference with Constitutional and Civil Rights
### Teruel v. Schiavi

41. Plaintiff repeats and re-alleges the foregoing paragraphs 1-40.

42. Section 4682 of the Maine Civil Rights Act provides in pertinent part that it is unlawful to "intentionally interfere or attempt to intentionally interfere with the exercise or enjoyment by any other person of those secured rights by….engaging in any conduct that would cause a reasonable person to suffer emotional distress."

43. Section 4684-A of the MCRA further provides that a person has the right to engage in lawful activities without being subject to…any conduct that would cause a reasonable person to suffer emotional distress…by reason of her sex.

44. Through the acts and omissions set forth above, Defendant has intentionally interfered with Plaintiff's civil rights to be free from sex discrimination and otherwise engaged in conduct that would cause a reasonable person to suffer emotional distress by reason of her sex.

45. Plaintiff, a reasonable person, did in fact suffer emotional distress as a direct and proximate result of Defendant's acts or omissions and sustained damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the Maine Civil Rights Act and common law:

A. Reinstatement, or front pay in lieu of reinstatement;
B. Back pay from November 21 2023, with prejudgment interest;
C. Compensatory damages;
D. Punitive damages;
E. An award of reasonable attorney's fees and all costs; and
F. All other damages to which Plaintiff may be entitled.

### COUNT IV
### 5 M.R.S. § 4572; 42 U.S.C. § 2000e-2
### Sex Discrimination - Hostile Work Environment and Disparate Treatment
### Spear v. Schiavi

46. Plaintiff repeats and re-alleges the foregoing paragraphs 1-45.

47. Ms. Spear is female and is, thus, a member of a protected class under Title VII and the MHRA.

48. Ms. Spear was qualified to perform the essential functions of her job.

49. As set forth above, Ms. Spear was subjected to unwelcome sexual harassment by her supervisor on numerous occasions while working for Defendant.

50. Ms. Spear objected to and opposed sexually offensive behavior and comments, and refused Mr. Little's numerous advances

51. The harassment to which Plaintiff was subjected was objectively and subjectively offensive, such that a reasonable person would find it hostile and abusive, and Ms. Spear in fact perceived it as hostile and abusive. The harassment

9

was sufficiently severe and pervasive to alter the terms and conditions of Ms. Spear's employment and created an abusive working environment.

52. Defendant knew or should have known of the sexual harassment and failed to take prompt remedial action, thereby permitting and/or ignoring a sexually hostile work environment.

53. Ms. Spear was subjected to adverse employment action, namely, her compelled resignation on or about October 2, 2023.

54. As a result of Defendant's conduct, Ms. Spear sustained pecuniary and non-pecuniary damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under Title VII and MHRA:

A. Reinstatement, or front pay in lieu of reinstatement;
B. Back pay from October 3, 2023, with prejudgment interest;
C. Compensatory damages;
D. Punitive damages;
E. An award of reasonable attorney's fees and all costs; and
F. All other damages to which plaintiff may be entitled.

## COUNT V
### 5 M.R.S. §§ 4682, 4684, 4684-A
### Interference with Constitutional and Civil Rights
### Spear v. Schiavi

55. Plaintiff repeats and re-alleges the foregoing paragraphs 1-54.

56. Section 4682 of the Maine Civil Rights Act provides in pertinent part that it is unlawful to "intentionally interfere or attempt to intentionally interfere with the exercise or enjoyment by any other person of those secured rights by….engaging in any conduct that would cause a reasonable person to suffer emotional distress."

10

57. Section 4684-A of the MCRA further provides that a person has the right to engage in lawful activities without being subject to…any conduct that would cause a reasonable person to suffer emotional distress…by reason of her sex.

58. Through the acts and omissions set forth above, Defendant has intentionally interfered with Plaintiff's civil rights to be free from sex discrimination and otherwise engaged in conduct that would cause a reasonable person to suffer emotional distress by reason of her sex.

59. Plaintiff, a reasonable person, did in fact suffer emotional distress as a direct and proximate result of Defendant's acts or omissions and sustained damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the Maine Civil Rights Act and common law:

A. Reinstatement, or front pay in lieu of reinstatement;
B. Back pay from November 21 2023, with prejudgment interest;
C. Compensatory damages;
D. Punitive damages;
E. An award of reasonable attorney's fees and all costs; and
F. All other damages to which Plaintiff may be entitled.

Dated:  August 29, 2025

*/s/ James A. Clifford*
James A. Clifford
james@cliffordclifford.com

*/s/ Andrew. P. Cotter*
Andrew P. Cotter
andrew@cliffordclifford.com

CLIFFORD & CLIFFORD, LLC
10 Moulton Street, 5th Floor
Portland, ME 04101
(207) 613-9465